UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JONATHAN LUTTRELL,                                              Plaintiff,

v.                                              Civil Action No. 3:16-cv-762-DJH-CHL

FORD MOTOR COMPANY,                                              Defendant.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Jonathan Luttrell formerly worked for Defendant Ford Motor Company as a vehicle assembler. Luttrell sued Ford after his employment was terminated in February 2016. Luttrell asserts claims for gender and race discrimination and retaliation under Title VII of the Civil Rights Act and the Kentucky Civil Rights Act (KCRA), disability discrimination under the Americans with Disabilities Act and the KCRA, age discrimination under the Age Discrimination in Employment Act and the KCRA, and retaliation under the Kentucky Workers' Compensation Act. (Docket No. 1) Ford seeks summary judgment on all claims asserted by Luttrell. (D.N. 17) For the reasons discussed below, Ford's motion will be granted.

## I.      BACKGROUND

Luttrell began working as a vehicle assembler for Ford at its Louisville, Kentucky plant in 2012. (*See* D.N. 17-3, PageID # 83-84) From February 2013 to October 2015, Luttrell often took medical leave. (*See, e.g.*, D.N. 17-8, PageID # 196; D.N. 25-1, PageID # 430) Then, on October 23, 2015, Luttrell suffered an injury to his shoulder while at work. (D.N. 25-1, PageID # 431; D.N. 17-19, PageID # 247) Luttrell filed a workers' compensation claim on November 6, 2015. (D.N. 25-1, PageID # 431; *see* D.N. 17-21, PageID # 270) That claim was later denied. (D.N. 25-14) However, UniCare, Ford's third-party administrator for disability benefits (D.N.

1

17-1, PageID # 58; D.N. 25, PageID # 403), placed Luttrell on a medical leave of absence and granted him disability benefits through November 12, 2015.  (D.N. 25-10, PageID # 449)

In December 2015, Luttrell filed an Equal Employment Opportunity Commission (EEOC) charge against Ford, alleging discrimination and retaliation on the basis of race, age, sex, and disability.  (D.N. 25-4)  On January 25, 2016, Ford sent Luttrell a letter informing him that his leave of absence had expired on November 12, 2015, and that his employment would be terminated if he did not return to work within five working days.  (D.N. 17-3, PageID # 168)  The letter further provided that if Luttrell was unable to report for work due to illness or disability, he was required to contact the plant physician to schedule an appointment to meet and discuss his medical condition.  (*Id.*)  After Luttrell failed to respond to the letter, Ford terminated his employment effective February 8, 2016.  (D.N. 17-4, PageID # 181)

Luttrell filed this suit against Ford on December 1, 2016, asserting claims of gender discrimination, race discrimination, civil rights retaliation, disability discrimination, age discrimination, and workers' compensation retaliation.  (D.N. 1)  Ford now seeks summary judgment on all of Luttrell's claims.  (D.N. 17)

## II.    STANDARD

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see* 56(c)(1).  "A 'genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party.'" *Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 444 (6th Cir. 2017) (quoting *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 255). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty.*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## III.   ANALYSIS

Luttrell raises claims of discrimination based on gender, race, age, and disability and retaliation. (D.N. 1) The Court will discuss each claim in turn.

### A.   Gender, Race, and Age Discrimination

In his complaint, Luttrell raises discrimination claims based on gender, race, and age and alleges facts that purportedly support those claims. (*See* D.N. 1) Luttrell's response in opposition to summary judgment does not address Ford's arguments with respect to those claims or state that the claims are waived. (*See* D.N. 25)

A plaintiff's "failure to respond potentially could constitute waiver of any opposition to [a defendant's] motion." *Collins v. Waste Mgmt. of Ky. Holdings, Inc.*, No. 06-175-ART, 2008 WL 2794661, at *5 (E.D. Ky. July 18, 2008). "This holds true in the summary judgment context . . . if the moving party has met its initial burden under Rule 56(c)." *Id.* "[U]nder Rule 56(c), a party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact." *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991). "[T]he movant must always bear this initial burden regardless if an adverse party fails to respond." *Id.* at 455. The Supreme Court has clarified, however, that this burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Catrett*, 477 U.S. at 325.

The Court is satisfied that Ford has met its initial burden with respect to Luttrell's gender, race, and age discrimination claims.[1]

> For a prima facie case of reverse race discrimination, a plaintiff must show that (1) "the defendant is [that] unusual employer who discriminates against the majority," (2) the plaintiff satisfactorily performed the job, (3) the plaintiff was impacted by an adverse employment action, and (4) "the defendant treated minority employees who were similarly situated to the plaintiff more favorably than [the plaintiff was treated]."

*Sanders v. Owens*, No. 3:09-CV-00536-R, 2011 WL 3878309, at *10 (W.D. Ky. Sept. 1, 2011) (quoting *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 339 (6th Cir. 2009)). "In order for . . . employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the [female

---

[1] The Court notes that while Luttrell brings these claims under Title VII, the Age Discrimination in Employment Act, and the KCRA (*see* D.N. 1, PageID # 4-6), "Kentucky courts interpret the Kentucky Civil Rights Act consistent with Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act." *Needler v. Coca-Cola Refreshments USA, Inc.*, No. 3:13-CV-781-CRS, 2016 WL 1261153, at *3 (W.D. Ky. Mar. 29, 2016).

and minority] employees who he alleges were treated more favorably." *Id.* at *11 (quoting *Morris*, 320 F. App'x at 340).

While Luttrell alleges that female and African American employees were treated more favorably than he was treated after suffering similar injuries (D.N. 1, PageID # 3-4), Ford points out that Luttrell's claims are based on nothing more than his testimony that he saw an African American woman and African American men working "light duty" jobs after they were injured on the assembly line. (D.N. 17-1, PageID # 71-72 (citing D.N. 17-3, PageID # 138)) Luttrell has not shown or even argued that all "relevant aspects of his employment" were "nearly identical" to those of the African American workers he observed on light duty. *See Sanders*, 2011 WL 3878309, at *11; *see also Scott v. Donahoe*, 913 F. Supp. 2d 355, 364 (W.D. Ky. 2012) (finding that female employees were not similarly situated to male plaintiff "because they worked in different positions . . . and/or had different physical restrictions"). Because Luttrell has failed to show that these African American workers were "similarly situated" to him, his reverse-discrimination claims based on gender and race fail. *See Sanders*, 2011 WL 3878309, at *10-11; *Gooden v. Ryan's Rest. Grp., Inc.*, No. 5:04-CV-179-R, 2007 WL 855326, at *10 (W.D. Ky. Mar. 14, 2007) (requiring a reverse-discrimination plaintiff to "compare Defendant's treatment of a similarly situated person of a minority class with Defendant's treatment of Plaintiff").

> To establish a prima facie case of age discrimination under the ADEA, a plaintiff must come forward with evidence that: (1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) after he was rejected, a substantially younger applicant was selected.

*Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510-11 (6th Cir. 2004). "The fourth element may be satisfied 'by showing that similarly situated non-protected employees were treated more

favorably.'" *Id.* at 511 (quoting *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)). "If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for its adverse employment action." *Id.* "If the defendant comes up with such a reason, the plaintiff must then demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination." *Id.* (quoting *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001)).

Luttrell's age-discrimination claim appears to be based on his allegation that Ford denied his applications for forklift-operator jobs and hired younger, less experienced individuals for those jobs instead. (*See* D.N. 1, PageID # 3) Ford points out that "forklift positions are bid jobs, awarded on the basis of seniority pursuant to the applicable collective bargaining agreement." (D.N. 17-1, PageID # 69; *see* D.N. 17-4, PageID # 184) Ford's "goal of complying with the collective bargaining agreement is a legitimate nondiscriminatory reason" for awarding forklift jobs to other employees instead of Luttrell. *See Haley v. Gen. Elec. Co.*, 3 F. App'x 240, 247 (6th Cir. 2001). Because Luttrell has not shown that this reason was a pretext for age discrimination, his claim must fail. *See Coomer*, 370 F.3d at 510-11.

The Court finds that Ford has adequately demonstrated the deficiencies in Luttrell's discrimination claims based on gender, race, and age. The Court will therefore grant summary judgment to Ford on these claims. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 507 (6th Cir. 2006) ("[T]he moving party need not support its motion for summary judgment with evidence; instead, it only must point out the deficiencies of the nonmoving party's case.").

## B.      Disability Discrimination

"The Sixth Circuit recognizes two types of disability discrimination claims—disparate treatment and failure to accommodate." *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 731 n.3 (W.D. Ky. 2013).  Because Luttrell appears to allege both types in this case (*see* D.N. 25, PageID # 410, 417), the Court will likewise address both types of disability discrimination.[2]

### 1.      Disparate Treatment

Luttrell correctly points out that a plaintiff may recover on a claim for disability discrimination "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). (*See* D.N. 25, PageID # 410-11)

> Luttrell suggests that this is a direct-evidence case:
>
> Ford issued Luttrell a Five-Day Quit Letter based on his failure to return to work at the end of his leave of absence.  Luttrell had not returned to work to that point, as Ford knew, because of a medical condition.  Because that condition qualifies as a disability, . . . the termination was based on his disability . . . .  This is not a circumstantial evidence case of disability discrimination.

(*Id.*, PageID # 414 (citations omitted))  The Court disagrees.  Direct evidence of discrimination exists where it is "uncontested by the parties that, but for Plaintiff's [disability], he would [not] have been [terminated]." *Cooper v. U.S. Enrichment Corp.*, No. 5:09-CV-153-R, 2011 WL

---

[2] Luttrell brings his disability-discrimination claims under both the ADA and the KCRA.  (D.N. 1, PageID # 5-6)  The Sixth Circuit, however, "'interpret[s] Kentucky protections for the disabled consonant with the federal Americans with Disabilities Act,' . . . except that the federal definition of a disability is broader than Kentucky's definition by virtue of the ADA Amendments Act of 2008." *Bush*, 683 F. App'x at 445 (quoting *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001)).  But because the Court need not address the definition of disability in order to resolve Luttrell's claims, it will analyze the ADA and KCRA claims together.

2534157, at *2, *4 (W.D. Ky. June 27, 2011).  Here, Ford argues that Luttrell was terminated because of "the expiration of his medical leave . . . and his failure to respond to Ford's five-day quit letter."  (D.N. 28, PageID # 494; *see* D.N. 17-4, PageID # 181)  This is not a case where "an employer admits (or the evidence establishes) that its decision was based upon the employee's disability."  *Monette*, 90 F.3d at 1180.  Instead, the fact finder here "still must infer that it was [Luttrell's disability], and not his [failure to respond to the letter], that led to the firing."  *See Cady v. Remington Arms Co.*, 665 F. App'x 413, 419 (6th Cir. 2016); *see also Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (explaining that direct evidence exists where, "if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven . . . discrimination").  The Court will therefore proceed with the burden-shifting framework that applies to indirect-evidence cases.  *See Ferrari*, 826 F.3d at 891-92.

> To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Id.* (citing *Monette*, 90 F.3d at 1186); *see also Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (confirming that this is the proper test for indirect-evidence cases).[3]  "Once the plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to 'offer a legitimate explanation for its action.'"  *Ferrari*, 826 F.3d at 892 (quoting

---

[3] Luttrell cites a different three-element test for establishing a prima facie case of discrimination under the ADA.  (*See* D.N. 25, PageID # 410)  But the Sixth Circuit clarified in *Whitfield* that the three-element test cited by Luttrell "makes little sense, as its third element—whether the employee was, in fact, discharged because of the disability—requires at the *prima facie* stage what the *McDonnell Douglas* burden-shifting framework seeks to uncover only through two additional burden shifts . . . ."  639 F.3d at 259.

*Monette*, 90 F.3d at 1186). "If the defendant does so, the burden then shifts back to the plaintiff, who 'must introduce evidence showing that the proffered explanation is pretextual.'" *Id.* (quoting *Monette*, 90 F.3d at 1186).

Ford argues that Luttrell "never presented any work restrictions arising out of his psychiatric condition." (D.N. 17-1, PageID # 71) Luttrell responds that his right-shoulder injury, rather than his psychiatric condition, rendered him disabled and that he was terminated because of his disability. (D.N. 25, PageID # 411, 414) Ford asserts that it had a legitimate, nondiscriminatory reason for terminating Luttrell after he failed to respond to the "five-day quit letter" the company sent him after his medical leave expired. (D.N. 28, PageID # 493-94)

Luttrell does not argue or point to any evidence showing that (1) his position remained open while Ford sought other applicants or (2) he was replaced. *See Ferrari*, 826 F.3d at 891-92. In the absence of any such evidence, the Court must grant summary judgment to Ford on this claim. *See Crocker v. City of Cleveland*, 39 F. App'x 248, 249-50 (6th Cir. 2002) (affirming grant of summary judgment to defendants where the plaintiff "did not show that he was replaced, or that his position remained open while his employer sought other applicants"); *Chambers v. E.W. James & Sons, Inc.*, No. 5:07-135-JMH, 2008 WL 3914969, at *7 (E.D. Ky. Aug. 20, 2008) (granting summary judgment to defendant where "there [was] no evidence that [the plaintiff] was 'replaced' by a non-disabled employee").

Even if Luttrell had established a prima facie case of disability discrimination, the Court would still grant summary judgment to Ford since it has offered a legitimate reason for Luttrell's termination and Luttrell has not shown that the reason was pretextual. *See Ferrari*, 826 F.3d at 892. Ford asserts that it terminated Luttrell's employment after he failed to respond to a letter informing him that (1) his "Conditional Sick Leave of Absence" had expired and (2) his

employment would be "automatically terminated" if he did not "return to work within five working days." (D.N. 17-3, PageID # 168; *see* D.N. 17-4, PageID # 181) Luttrell's failure to respond to the letter qualifies as a legitimate explanation for Ford's action. *See Stanciel v. Donahoe*, 570 F. App'x 578, 581 (6th Cir. 2014) (noting that the plaintiff's "numerous attendance violations" qualified as "a legitimate, non-discriminatory reason" for terminating his employment); *cf. Walborn v. Erie Cty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998) ("[An employee's work violations constitute a legitimate, nondiscriminatory reason for adverse employment decisions.").

The burden now shifts back to Luttrell to "introduce evidence showing that [Ford's] proffered explanation is pretextual." *Ferrari*, 826 F.3d at 894 (quoting *Monette*, 90 F.3d at 1186). "Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Id.* at 895 (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). "[P]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Cady*, 665 F. App'x at 420 (citation omitted). As explained in more detail below,[4] Luttrell has not come forward with "evidence from which a reasonable jury could conclude that [Ford's] proffered rationale for [his] termination . . . was pretextual."[5] *See*

---

[4] In the Sixth Circuit, the three ways a plaintiff can show pretext as laid out above are the same with respect to both disability-discrimination and retaliation claims. *Compare Ferrari*, 826 F.3d at 895, *with Jordan v. Kohl's Dep't Stores, Inc.*, 490 F. App'x 738, 742 (6th Cir. 2012). Because Luttrell made his pretext arguments within the context of his retaliation claims (*see* D.N. 25, PageID # 424-27), the Court will rely here on its pretext analysis within the discussion of those claims. *See infra* Section III.C.

[5] Luttrell does assert, however, that he never received the five-day quit letter. (D.N. 25, PageID # 407; *see* D.N. 25-1, PageID # 436) But "as long as [Ford] honestly believed the reason it gave for its employment action, [Luttrell] is not able to establish pretext even if [Ford's] reason is

10

*Stanciel*, 570 F. App'x at 583. The Court will therefore grant summary judgment to Ford on Luttrell's disparate-treatment disability-discrimination claim.

### 2. Failure to Accommodate

As an initial matter, it is unclear to the Court whether the complaint gave Ford sufficient notice that Luttrell was pursuing a failure-to-accommodate claim. "The complaint must provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 423-24 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Luttrell's complaint does not specifically allege that Ford failed to accommodate Luttrell. (*See* D.N. 1, PageID # 5-6) However, Ford argued in its opening summary-judgment brief that it was under "no obligation to accommodate" Luttrell because he "never presented any work restrictions." (D.N. 17-1, PageID # 71) The Court need not resolve this notice issue, however, because Luttrell could not prevail on a failure-to-accommodate claim in any event.

> In order to establish a prima facie case of a failure to accommodate claim under the ADA, "a plaintiff must show that: (1) [he] is disabled within the meaning of the Act; (2) [he] is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the employer failed to provide the necessary accommodation."

*Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014) (quoting *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011)); *see also Brown*, 942 F. Supp. 2d at 730 (noting that burden-shifting scheme does not apply to failure-to-accommodate claims).

---

ultimately found to be mistaken." *Ferrari*, 826 F.3d at 895. As explained further below, Luttrell has not presented evidence creating a dispute of fact as to whether Ford honestly believed that Luttrell failed to respond to the letter. *See id.* at 896-97; *see also Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 447-48 (6th Cir. 2018) ("[A] plaintiff does not meet [his] burden [to show pretext] if [he] simply shows that the defendant's stated reason was incorrect.").

Ford argues that Luttrell did not make a sufficiently clear accommodation request and that, even if he did, he has not proven that his request was reasonable. (D.N. 28, PageID # 491-93) Luttrell asserts that he did request an accommodation—namely, to be permitted not to work while he was treated for his shoulder injury—and that Ford failed to reasonably accommodate him. (D.N. 25, PageID # 418-22)

There is "no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation." *Judge*, 592 F. App'x at 407. "On one hand, [the Sixth Circuit has] held that the ADA does not require employees to 'use the magic words "accommodation" or even "disability."'" *Id.* (quoting *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007)). "On the other hand, '[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation.'" *Id.* (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998)). "The employee also must make it clear that the request is being made because of the employee's disability." *Id.*

Luttrell has presented no evidence showing that he requested an accommodation from Ford related to his shoulder injury.[6] Indeed, Luttrell argues that he requested "to be permitted not to work" "by implication." (D.N. 25, PageID # 419) Luttrell cites no authority in support of his argument that such a request may be implied. (*See id.*) Because Luttrell has failed to show that he requested an accommodation, his failure-to-accommodate claim fails.[7] *See Gamble v. JP*

---

[6] Luttrell stated earlier in his deposition that he had a "mental health disability" and that he requested a forklift job as an accommodation for that disability. (D.N. 17-3, PageID # 132) Curiously, Luttrell's brief in opposition to summary judgment asserts instead that his shoulder injury rendered him disabled and makes no mention of a forklift job as an accommodation. (*See* D.N. 25)

[7] Luttrell asserts that Ford had "an obligation to help identify an appropriate accommodation" for him. (D.N. 25, PageID # 418) But "if the employee never requests an accommodation, the

*Morgan Chase & Co.*, 689 F. App'x 397, 404 (6th Cir. 2017) (holding that district court did not err in granting summary judgment to defendant on failure-to-accommodate claim where the plaintiff "present[ed] no . . . evidence that he requested an accommodation from [defendant]"); *Adkins v. Excel Mining, LLC*, 214 F. Supp. 3d 617, 626 (E.D. Ky. 2016) ("For [defendant] to have failed to accommodate his disability, [Luttrell] must have requested an accommodation. Because he did not, his failure-to-accommodate claim fails.").

Even if the Court were to find that Luttrell requested an accommodation in the form of additional leave, such a request would not have been reasonable under these circumstances. "An employer is not required to keep an employee's job open indefinitely." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017). "[A]dditional leave is an objectively unreasonable accommodation where an employee has already received significant amounts of leave and has demonstrated 'no clear prospects for recovery.'" *Id.* (quoting *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th Cir. 2000)). "A physician's estimate of a return date alone does not necessarily indicate a clear prospect for recovery, especially where an employee has repeatedly taken leaves of unspecified duration and has not demonstrated that additional leave will remedy [his] condition." *Id.*

Luttrell alleges that he injured his shoulder at work on October 23, 2015. (D.N. 25-1, PageID # 431) UniCare granted Luttrell disability benefits and a medical leave of absence through November 12, 2015. (D.N. 25-10, PageID # 449) In seeking additional benefits, Luttrell submitted to UniCare notes from his treating physicians that included a return-to-work date of November 25, 2015; a return-to-work date of January 12, 2016, contingent upon an

---

employer's duty to engage in the interactive process [to identify potential accommodations] is never triggered." *Judge*, 592 F. App'x at 407 (quoting *Melange v. City of Center Line*, 482 F. App'x 81, 85 (6th Cir. 2012)).

orthopedic evaluation; and estimated return-to-work dates of July 4, 2016, and July 25, 2016. (D.N. 25-8; D.N. 25-12; D.N. 25-17; D.N. 25-20)   Luttrell's actual return-to-work date was uncertain, as shown by these shifting dates.  (*See id.*)   The Court concludes that it would have been unreasonable under these circumstances to require Ford to keep Luttrell on medical leave indefinitely.  *See Maat v. County of Ottawa*, 657 F. App'x 404, 413 (6th Cir. 2016) ("Because [the plaintiff's] requested leave was not definite in duration, it could not have been a reasonable accommodation under the law of this circuit."); *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 297-98 (6th Cir. 2015) ("We have found that when an employee's return date is not so certain, an employer is not required to keep open a job for an employee indefinitely.").  Luttrell's failure-to-accommodate claim therefore fails, and the Court will grant summary judgment to Ford on this claim.

### C.      Title VII and KCRA Retaliation

Luttrell asserts that Ford retaliated against him for complaining of discrimination.  (D.N. 1, PageID # 5)   He brings retaliation claims pursuant to Title VII and the KCRA.  (*Id.*) "Retaliation claims under the KCRA are evaluated under the same standard as we use to evaluate federal Title VII claims."  *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014).  Luttrell provides no direct evidence of retaliation; thus, his claims are evaluated using the *McDonnell Douglas* burden-shifting framework.  *See id.*

> Under that framework, [Luttrell] must show that [he] (1) engaged in a protected activity, (2) that [Ford] knew of [his] protected conduct, (3) that [Ford] took an adverse employment action against [him] after [his] protected conduct, and (4) that there was a causal connection between the exercise of [Luttrell's] protected right and the adverse employment action taken by [Ford].

*Id.*   "If [Luttrell] makes out this prima facie case, the burden shifts to [Ford] to produce a legitimate, non-retaliatory reason for its action."  *Id.*   "Assuming that [Ford] is able to produce

such an explanation, the burden shifts back to [Luttrell] to put forward competent evidence from which a reasonable jury could conclude that the stated reason is merely pretextual." *Id.*

The parties agree that Luttrell engaged in a protected activity when he filed a charge with the EEOC in December 2015. (*See* D.N. 17-1, PageID # 73; D.N. 25, PageID # 422, 424; *see also* D.N. 17-3, PageID # 167) *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) ("Under Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ('EEOC') and opposition to an apparent Title VII violation."). Ford does not dispute that it knew of Luttrell's EEOC charge. (*See* D.N. 17-1, PageID # 73) Luttrell's employment was terminated in February 2016. (D.N. 17-4, PageID # 181; *see* D.N. 17-3, PageID # 176) Termination of employment plainly qualifies as an adverse employment action. *See Wasek*, 682 F.3d at 470. Thus, the issue is whether Luttrell has shown a causal connection between his EEOC charge and subsequent termination. *See Montell*, 757 F.3d at 504.

Ford terminated Luttrell's employment effective February 8, 2016, less than two months after Luttrell filed his December 14, 2015 EEOC charge. (*See* D.N. 17-3, PageID # 176, 167) Ford maintains that temporal proximity alone is not enough to show causation in the absence of other compelling evidence. (D.N. 17-1, PageID # 74) Luttrell contends that the Court should find a causal connection in this case based solely on the close temporal proximity between the two events. (D.N. 25, PageID # 423)

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). "But where

some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* The Sixth Circuit has concluded that a two-month time period between protected activity and adverse employment action is sufficient to establish causation for purposes of a Title VII retaliation claim. *See Frazier v. Richland Pub. Health*, 685 F. App'x 443, 455, 445 (6th Cir. 2017) (explaining that "a two to three month period between protected activity and adverse employment action was sufficient to establish a causal connection" within the context of Title VII retaliation claim); *Goller v. Ohio Dep't of Rehab. & Corr.*, 285 F. App'x 250, 256-57 (6th Cir. 2008) (holding that temporal proximity was "enough to generate an inference of [Title VII] retaliation" where the plaintiff "complained [of racial discrimination] within two months of her termination"); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562-63 (6th Cir. 2004) (concluding that temporal proximity was "significant enough to constitute sufficient evidence of a causal connection" for the purpose of demonstrating prima facie case of Title VII retaliation where the plaintiff was terminated three months after he filed a discrimination charge with the employment commission). The Court therefore finds that the two-month gap between the filing of Luttrell's EEOC charge and his termination is sufficient to show causation in this case.

Because Luttrell has established a prima facie case, the burden shifts to Ford to articulate a legitimate, non-retaliatory reason for its action. *See Montell*, 757 F.3d at 504. Ford asserts that it terminated Luttrell for "his failure to respond to the five-day quit letter sent to him . . . after his conditional medical leave expired." (D.N. 17-1, PageID # 74) On January 25, 2016, Ford sent Luttrell a letter advising him that his employment would "automatically [be] terminated . . . if [he] did not return to work within five working days." (D.N. 17-3, PageID # 168) Luttrell failed

to respond to the letter, and his employment was terminated. (D.N. 17-4, PageID # 181) The Court finds that Ford has met its burden by producing a legitimate, non-retaliatory reason for Luttrell's termination. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 589 (6th Cir. 2009) ("As we have noted, Ford's burden is merely one of production, not persuasion, and it does not involve a credibility assessment.").

Luttrell argues that Ford's stated reason for his termination is merely pretext for unlawful retaliation. (*See* D.N. 25, PageID # 424-27) "A plaintiff can show pretext by demonstrating that: '(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for termination, or (3) the reason offered was insufficient to explain the employer's action.'" *Jordan*, 490 F. App'x at 742 (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)). "Whichever method the plaintiff employs, he always bears the burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Id.* (alteration in original) (quoting *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011)).

Luttrell maintains that Ford's stated reason for terminating him—his failure to respond to the five-day quit letter—is either "not based on the facts or . . . insufficient to explain its actions." (D.N. 25, PageID # 425) "An attempt to show pretext by demonstrating that the proffered reasons have no basis in fact 'is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false."'" *Singleton v. Select Specialty Hosp.-Lexington, Inc.*, 391 F. App'x 395, 400 (6th Cir. 2010) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The five-day quit letter provided that Luttrell's conditional sick leave of absence had expired on

November 12, 2015, and that "[his] employment [would] be automatically terminated with possible loss of seniority if [he did] not return to work within five working days . . . of the date of [the] letter." (D.N. 17-3, PageID # 168)  The letter was dated January 25, 2016.  (*Id.*)  The letter further provided that "[i]f [Luttrell's] illness or disability prevent[ed] [him] from reporting for work within the time stated above, [Luttrell] must within such time contact the Plant Physician to schedule an appointment to meet and discuss [his] medical condition."  (*Id.*)  Luttrell submits evidence showing that he presented medical documentation to Ford between November 12, 2015, and January 25, 2016.  (D.N. 25, PageID # 425; *see* D.N. 25-1, PageID # 432-34)  But Luttrell has presented no evidence that he responded to the January 25, 2016 five-day quit letter by either returning to work or contacting the plant physician within five working days.  He has therefore failed to show that Ford's proffered basis for his termination "never happened."  *See Singleton*, 391 F. App'x at 400.

"To establish the insufficiency of [Ford's] proffered reasons, [Luttrell] must show that 'other employees, particularly employees not in the protected class, were not [terminated] even though they engaged in substantially identical conduct to that which the employer contends motivated its [termination of Luttrell].'"  *Amos v. McNairy Cty.*, 622 F. App'x 529, 538 n.7 (6th Cir. 2015) (quoting *Rhoades v. Standard Parking Corp.*, 559 F. App'x 500, 505 (6th Cir. 2014)).  Luttrell argues that he was treated differently after filing his EEOC charge than he was prior to filing the charge.  (D.N. 25, PageID # 426)  UniCare awarded Luttrell disability benefits through November 12, 2015, but on December 17, 2015, UniCare informed Luttrell that he was no longer eligible for such benefits.  (*See* D.N. 25-10, PageID # 449; D.N. 17-29, PageID # 305)  Luttrell's EEOC charge was received on December 14, 2015.  (D.N. 17-3, PageID # 167)  Luttrell has not shown, however, that other employees avoided termination after failing to respond to a five-day

quit letter. *See Amos*, 622 F. App'x at 538 n.7; *see also Singleton*, 391 F. App'x at 403 (explaining that "the point of the test . . . is to compare an employer's treatment of other employees who had engaged in the conduct that is claimed to be the legitimate nondiscriminatory reason for termination").

Luttrell asserts in his declaration that he did not receive the January 25, 2016 five-day quit letter. (D.N. 25-1, PageID # 436) However, "[i]f an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012). Indeed, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Id.* at 531 (alteration in original) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009)). "The key inquiry is 'whether the employer made a reasonably informed and considered decision before taking the complained-of action.'" *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 405 (6th Cir. 2014) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007)). "To overcome the employer's invocation of the honest belief rule, the employee . . . 'must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-[retaliatory] reason for its adverse employment action.'" *Id.* (alteration in original) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)).

Prior to terminating Luttrell, Ford communicated with UniCare. (*See* D.N. 17-32, PageID # 329-31) UniCare advised that the medical information it had received from Luttrell was "not sufficient to authorize [additional] benefits." (*Id.*, PageID # 330-31) Ford later asked

UniCare whether it had any medical update on Luttrell, and UniCare responded that "nothing [was] received to justify [further] medical [leave]." (*Id.*, PageID # 330) The Court concludes that Ford's decision to terminate Luttrell was reasonably informed, and Luttrell has not presented evidence demonstrating that Ford did not honestly believe in its proffered reason for the termination. Because Ford has articulated a legitimate reason for its termination of Luttrell, and because Luttrell has not shown that the reason was pretextual, the Court will grant summary judgment to Ford on Luttrell's Title VII and KCRA retaliation claims.

### D.    Workers' Compensation Retaliation

Finally, Luttrell brings a separate retaliation claim pursuant to the Kentucky Workers' Compensation Act. (D.N. 1, PageID # 6) The Act provides that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful [workers' compensation] claim under this chapter." Ky. Rev. Stat. § 342.197(1). "Claims under this statute are analyzed under a burden-shifting framework that requires the employee to establish a prima facie case of workers' compensation retaliation." *Saunders v. Ford Motor Co.*, 879 F.3d 742, 752 (6th Cir. 2018).

> A prima facie case of workers' compensation retaliation under Kentucky law requires evidence that "(1) [the plaintiff] engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action."

*Id.* (alteration in original) (quoting *Colorama, Inc. v. Johnson*, 295 S.W.3d 148, 152 (Ky. Ct. App. 2009)). "If an employee is able to establish a prima facie case of workers' compensation retaliation under Kentucky law, then the burden shifts to the employer to provide a legitimate, non-retaliatory reason for its conduct, which the employee then has the opportunity to expose as pretextual by a preponderance of the evidence." *Id.*

Ford does not dispute that Luttrell satisfies the first three elements of his prima facie case. (*See* D.N. 17-1, PageID # 76-77)  Luttrell engaged in a protected activity by pursuing a workers' compensation claim.  *See Darby v. Gordon Food Servs., Inc.*, No. 3:11-cv-00646-DJH, 2015 WL 3622529, at *3 (W.D. Ky. June 9, 2015).  (*See* D.N. 17-21)  Ford knew that Luttrell had done so. (*See id.*; *see also* D.N. 17-1, PageID # 61)  And Luttrell's termination clearly qualifies as an adverse employment action.  (D.N. 17-4, PageID # 181)  *See Spears v. Amazon.com.KYDC LLC*, No. 10-325-GFVT, 2013 WL 556392, at *12 (E.D. Ky. Feb. 12, 2013).  Thus, the only element in question is whether there was a causal connection between Luttrell's workers' compensation claim and his termination.  *See Saunders*, 879 F.3d at 752.

Ford argues that the three-month gap between Luttrell's hiring of a workers' compensation lawyer and his termination is insufficient to show causation in the absence of any other link between the two events.  (D.N. 17-1, PageID # 77)  Luttrell again argues that the temporal proximity between the filing of his workers' compensation claim and his termination suggests a connection between the two.  (D.N. 25, PageID # 428)

Luttrell's workers' compensation claim was opened in Ford's system on November 6, 2015.  (*See* D.N. 17-21, PageID # 270)  Ford sent the five-day quit letter to Luttrell on January 25, 2016 (D.N. 17-3, PageID # 168), and then terminated Luttrell's employment effective February 8, 2016 (D.N. 17-4, PageID # 181).  Thus, approximately two and a half months passed between the opening of Luttrell's workers' compensation claim and the issuance of the letter that led to his termination.

This Court in *Bush v. Compass Group USA, LLC* explained that "[t]he sooner adverse action is taken after the protected activity, the stronger the implication that the protected activity caused the adverse action, particularly if no legitimate reason for the adverse action is evident."

194 F. Supp. 3d 580, 586 (W.D. Ky. 2016) (quoting *Dollar Gen. Partners v. Upchurch*, 214

S.W.3d 910, 916 (Ky. Ct. App. 2006)).  "There is no bright line after which adverse action is

deemed too far removed to have been prompted by protected activity; rather, the Court must

'view the time between the two events in the context of the entire circumstances' to determine

whether the timing is significant."  *Id.* (quoting *Upchurch*, 214 S.W.3d at 916).  In *Bush*, this

Court determined that "a four- to eight-month gap" was insufficient to establish causation "[i]n

the absence of any other evidence linking [the plaintiff's] termination to his pursuit of workers'

compensation benefits."  *Id.* at 586-87.  The Sixth Circuit in affirming this Court's decision

recognized that

> under Kentucky law, temporal proximity between a worker's protected activity
> and an adverse employment action is generally insufficient to sustain a retaliation
> claim where . . . the plaintiff "does not point to any other facts or circumstances
> which would support an inference that [the employer] retaliated against [the
> plaintiff] based on [the workers' compensation] claim."

*Bush*, 683 F. App'x at 454 (alterations in original) (quoting *Collins v. Sapphire Coal Co.*, No.

2010-CA-000690-MR, 2011 WL 4633099, at *3 (Ky. Ct. App. Oct. 7, 2011)).

Aside from temporal proximity, Luttrell has pointed to no evidence linking his

termination to his workers' compensation claim.  (*See* D.N. 25, PageID # 428)  And as explained

below, Ford has offered a legitimate reason for Luttrell's termination.  *Cf. Bush*, 194 F. Supp. 3d

at 586 (noting that causation may be implied from temporal proximity "if no legitimate reason

for the adverse action is evident").  The Court therefore concludes that Luttrell has failed to

establish a causal connection between his workers' compensation claim and his termination.  *See*

*Saunders v. Ford Motor Co.*, No. 3:14-CV-00594-JHM, 2016 WL 6868155, at *9 (W.D. Ky.

Nov. 18, 2016) (finding that "one-and-one-half month gap between" protected activity and

adverse employment action was insufficient to establish causation where the plaintiff "fail[ed] to provide any additional evidence of causation beyond temporal proximity").[8]

Even if Luttrell could establish a prima facie case, the Court would still conclude that his workers' compensation retaliation claim fails. Ford has articulated a non-retaliatory reason for Luttrell's termination—namely, his failure to respond to the five-day quit letter. (D.N. 17-4, PageID # 181; *see* D.N. 17-3, PageID # 168) Because Luttrell has presented no evidence suggesting that his failure to respond to the letter was not the actual reason for his termination, the Court concludes that Ford's stated reason was legitimate and not pretextual.[9] *See Witham*, 815 F.3d at 263 (holding that the plaintiff could not show pretext where "[t]here [was] nothing to rebut" evidence that employer fired her for a legitimate reason). Therefore, the Court will also grant summary judgment to Ford on Luttrell's workers' compensation retaliation claim.

---

[8] Luttrell also argues that Ford decided to move forward with his termination "virtually the same day it decided [that] his workers['] compensation claim did not hold merit." (D.N. 25, PageID # 428) This "suggests a connection between the two" according to Luttrell. (*Id.*) But this argument "ignores the actual protected activity–the filing and litigating of [Luttrell's] workers' compensation claim." *See Frazier v. Southwire Co.*, No. 4:14-CV-00125-CRS, 2016 WL 2869792, at *4 (W.D. Ky. May 16, 2016).

[9] Luttrell questions why Ford issued the five-day quit letter "over two months after his leave allegedly expired." (D.N. 25, PageID # 428) But "[c]ompanies need not rashly discharge an employee at the first sign of trouble to prove the sincerity of their motives." *Witham v. Intown Suites Louisville Ne., LLC*, 815 F.3d 260, 264 (6th Cir. 2016)

**IV.    CONCLUSION**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Defendant Ford Motor Company's motion for summary judgment (D.N. 17) is **GRANTED**.  A separate judgment will be entered this date.

July 20, 2018

David J. Hale, Judge
United States District Court